## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FREDERICK A. TATE,** | ) | |
| *AIS # 00207330*, | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:23-00090-KD-N** |
| | ) | |
| **ANTONIO McCLAIN,** | ) | |
| *Correctional Warden III*, | ) | |
| *Bullock Correctional Facility*, | ) | |
| *Alabama Department of* | ) | |
| *Corrections*, | ) | |
| | ) | |
| **Respondent.**[1] | ) | |

## REPORT AND RECOMMENDATION

Petitioner Frederick A. Tate, an Alabama prisoner proceeding without

counsel (*pro se*), initiated this action by filing a petition for a writ of habeas

corpus under 28 U.S.C. § 2254 dated March 2023, challenging his confinement

---

[1] "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].' 28 U.S.C. § 2242; see also § 2243 ('The writ, or order to show cause shall be directed to the person having custody of the person detained') … [L]ongstanding practice confirms that in habeas challenges to present physical confinement[,] the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004). The petitioner has been transferred to a different prison since commencing this action. Accordingly, Antonio McClain, head warden of the facility where the petitioner is currently being held, *see* https://doc.alabama.gov/inmatesearch.aspx (last visited Jan. 16, 2026); https://doc.alabama.gov/facility.aspx?loc=4 (last visited Jan. 16, 2026), is substituted *sua sponte* as the respondent in this action, replacing all other prior named respondents. The Clerk of Court is **DIRECTED** to update the docket accordingly.

pursuant to criminal judgments handed down by the Circuit Court of Mobile County, Alabama. (Doc# 1).[2] He has also paid the requisite $5 filing fee for this habeas corpus action. *See* (Doc# 4); 28 U.S.C. § 1914(a). The assigned District Judge has referred the petition to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (3/16/2023 electronic reference notation). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the petition, in accordance with 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

Under Rule 4 of the Rules Governing Section 2254 Cases, a judge must examine a habeas petition as soon as practicable after its filing and, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Upon preliminary review under Rule 4, the undersigned concludes that it plainly appears Tate is due no relief on his habeas petition because he has failed to sufficiently plead facts showing

---

[2] Because Tate challenges criminal judgments handed down by a state court within this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain his habeas petition. *See* 28 U.S.C. § 2241(d).

entitlement to relief on some claims, and others are clearly meritless based on consideration of the publicly available state court record.[3] [4]

---

[3] All exhibits attached hereto have been obtained from the publicly available dockets of Tate's state circuit court criminal cases, accessed through Alabama's online court docket access portal, Alacourt.com. The Eleventh Circuit Court of Appeals has held that a district court may properly dismiss a habeas petition under Rule 4 based on consideration of materials from the online dockets of a petitioner's state court criminal cases, even when those materials were not attached to the petition. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-55 (11th Cir. 2020) (per curiam) (affirming Rule 4 dismissal of habeas petition as time-barred, without first requiring answer from respondent, based on consideration of filings from the online docket of the petitioner's state criminal proceedings,). This is because "[s]tate court records of an inmate's postconviction proceedings" may be judicially noticed in federal habeas case, so long as parties have opportunity to be heard on the propriety of such notice. *Id.* at 651-53. *See also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("It recognized that a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." (citation and quotations omitted)). As will be explained, Tate will have the opportunity to submit objections to this Report and Recommendation, and thus may be heard on the propriety of judicial noticing the state court documents attached hereto. As required by Rule 4, the Respondent will also be served with a copy of this Report and Recommendation and be given a chance to address the issue.

[4]     In a filing dated June 16, 2025, requesting a status update on this case, Tate asks why he hasn't been appointed a lawyer in this case and asserts he has "the right to a lawyer even if [he] can't afford one." (Doc# 6, PageID.26). However, there is no right to counsel under the Sixth Amendment to the United States Constitution in proceedings for postconviction relief, *see Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, *see Johnson v. Avery*, 393 U.S. 483, 488, 89 S. Ct. 747, 750, 21 L. Ed. 2d 718 (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first

appeal of right, and no further."); *Barbour v. Haley*, 471 F.3d 1222, 1231 (11th Cir. 2006) ("The Sixth Amendment applies only to criminal proceedings … [P]ostconviction relief is not part of the criminal proceeding itself; rather, it is civil in nature. It is a collateral attack that normally occurs only after the direct appeals process is completed and the defendant's conviction has become final. Thus, the Sixth Amendment has no application to the inmates' claims for postconviction counsel." (citations omitted)). A prisoner also does not have an absolute statutory right to counsel in federal postconviction proceedings not involving a death sentence, as is the case here. *Cf. Weeks v. Jones*, 100 F.3d 124, 126–27 (11th Cir. 1996) ("Under the Anti–Drug Abuse Act of 1988, § 7001(b), 21 U.S.C. § 848(q)(4)(B) (1988), Congress established an absolute right to counsel for indigent death-sentenced prisoners seeking federal habeas relief … On its face, this statute grants indigent capital defendants a mandatory right to qualified legal counsel in any federal post conviction proceeding." (quotation omitted)).

An indigent prisoner "could have a constitutional right under the Fifth Amendment's due process clause, which the Supreme Court has interpreted as requiring counsel to be appointed whenever 'fundamental fairness' would demand it." *United States v. Webb*, 565 F.3d 789, 794 (11th Cir. 2009) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S. Ct. 1756, 1763, 36 L. Ed. 2d 656 (1973)). Under 18 U.S.C. § 3006A, a court "may" appoint counsel for an indigent person who "is seeking relief under section 2241, 2254, or 2255 of title 28" if "the interests of justice so require…" 18 U.S.C. § 3006A(a)(2)(B). "The Rules Governing 2254 Cases, in turn, require counsel to be appointed for indigent parties if necessary for effective discovery or if an evidentiary hearing is warranted." *United States v. Johnson*, 842 F. App'x 402, 405 (11th Cir. 2021) (per curiam) (unpublished) (citing Rules Governing Section 2254 Cases, Rules 6(a), 8(c)). And "[w]hen a party does not have a constitutional, statutory, or rule-based right to counsel, the district court may exercise its discretion as to whether to appoint counsel." *Id.*

Because Tate's petition is due to be dismissed under Rule 4 of the Rules Governing Section 2254 Cases, he is entitled to neither discovery nor an evidentiary hearing, and consequently is not entitled to appointment of counsel for either. Tate has also not established that "fundamental fairness" demands appointment of counsel under the Fifth Amendment, that the "interests of justice" require appointment of counsel under § 3006A, or that any exceptional circumstances warrant discretionary appointment of counsel. The mere fact that a *pro se* prisoner has no legal training and is otherwise limited in his legal knowledge does not, by itself, justify appointing counsel under any of the foregoing circumstances, as this is true of most *pro se* prisoner litigants, and would in effect create a *de facto* right to counsel for any indigent non-lawyer prisoner seeking collateral relief.

4

# I.    *Procedural Background*

Tate was convicted by a jury in Mobile County Circuit Court of first-degree rape in violation of Code of Alabama § 13A-6-61, and first-degree sodomy in violation of Code of Alabama § 13A-6-63 (Case Nos. CC-18-4627 & -4628), and was sentenced to concurrent terms of 22 years' imprisonment for each count. On direct appeal of those judgments, the Alabama Court of Criminal Appeals (ACCA) affirmed by unpublished memorandum decision issued August 27, 2021, *see Tate v. State*, 360 So. 3d 1062 (Table); (attached Exhibit 1 [ACCA Memorandum Decision]). The ACCA denied Tate's subsequent application for rehearing, *see Tate v. State*, 367 So. 3d 1116 (Table) (Oct. 8, 2021), and the Supreme Court of Alabama denied Tate's petition for certiorari review of the ACCA's decision on May 2, 2022, *see Ex parte Tate*, 380 So. 3d 1006 (Table), both by unwritten decisions. The ACCA issued a Certificate of Judgment in Tate's appeal that same day. *See* (attached Exhibit 2); Ala. R. App. P 41(b).

Sometime in August 2022, Tate filed with the Mobile County Circuit Court a petition for post-conviction relief from those judgments under Alabama Rule of Criminal Procedure 32. (See attached Exhibit 3, pp. 1-7). An employee of the circuit court clerk sent Tate a "Document Request Processing Form" dated September 1, 2022, directing that he either submit a $260 payment "or file a [sic] (in forma pauperis declaration)." (*Id.*, p. 8).[5] To date, there is no indication

---

[5] *See* Ala. R. Crim. P 32.6(a) (A Rule 32 petition "shall…be accompanied by the filing fee prescribed by law or rule in civil cases in the circuit court unless the

on the dockets of his state criminal cases that Tate complied with that directive, nor does it appear the circuit court has taken any further action on the Rule 32 petition (though it has acted on several other motions since filed by Tate requesting release or a modification of his sentence). (*See* attached Exhibits 4 & 5 [1/7/2026 Case Action Summaries of Mobile County Circuit Court Case Nos. CC-18-4627 & -4628]).

Tate filed the present § 2254 petition challenging his rape and sodomy judgments in March 2023.

## II.    *Analysis*

Tate's present petition asserts four grounds for relief. The undersigned will address each in turn.

### a.  Ground One - Ineffective Assistance of Counsel

Tate first claims he was denied effective representation at trial in violation of the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

petitioner applies for and is given leave to prosecute the petition in forma pauperis. If the petitioner desires to prosecute the petition in forma pauperis, he or she shall file the 'In Forma Pauperis Declaration' at the end of the form[,] accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined, stating the amount of money or securities on deposit to the petitioner's credit in any account in the institution for the previous twelve (12) months, which certificate may be considered by the court in acting upon the petitioner's application for leave to proceed in forma pauperis."); *Ex Parte Mays*, 317 So. 3d 1032, 1036 (Ala. Crim. App. 2020) ("[C]ircuit courts do not obtain subject-matter jurisdiction over a Rule 32 petition 'without first collecting a docket fee or granting a proper request to be allowed to proceed in forma pauperis.' " (quoting *Ex parte McWilliams*, 812 So. 2d 318, 321-22 (Ala. 2001)).

"To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some

conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas,* 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). *Accord, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 24, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965

F.2d 952, 960 (11th Cir. 1992). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " *Johnson*, 256 F.3d at 1176 (quoting *Waters,* 46 F.3d at 1511 (citation omitted))).

Importantly, " '[c]onclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (alteration added) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). And more generally, the Rules Governing Section 2254 Cases require that a habeas petition, among other things, *both* "specify all the grounds for relief available to the petitioner" *and* "state the facts supporting each ground…" Rule 2(c)(1)-(2) of the Rules Governing Section 2254 Cases in the United States District Courts. In assessing whether a litigant has alleged a viable claim for relief, courts " 'afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action.' " *Duty Free Ams., Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015) (quoting *Franklin v. Curry*, 738 F.3d 1246, 1248 n. 1 (11th Cir. 2013) (per curiam)). *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' … [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement…[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citations and some quotations omitted)).

Here, Tate has offered only conclusory allegations of ineffective assistance, unsupported by any factual specifics. His claim that "his counsel's performance was deficient and the deficient performance prejudiced his defense" (Doc# 1, PageID.6) is a legal conclusion entitled to no presumption of truth. He does further allege that his counsel "failed to object to inadmissible and false evidence" and "failed to investigate the charge/case thouroughly [sic]." (*Id.*). However, without specifying what "inadmissible and false evidence" was purportedly admitted at trial, or what counsel's purported deficient investigation failed to uncover, such allegations amount to only bare assertions that Tate's counsel "could have done more," which is not sufficient to show unconstitutionally ineffective assistance. *Waters,* 46 F.3d at 1518. And even if such allegations are sufficient at the pleading stage to show deficient performance, Tate has asserted no facts suggesting that any such errors resulted in prejudice under *Strickland*.[6]

---

[6] In support of his claims of ineffective assistance, Tate also alleges that "[t]here existed a conflict of interest whereas counsel failed to disclose that Tate could

Accordingly, Tate is plainly due no relief on his claims of ineffective assistance of counsel in Ground One.

### b. Ground Two – Sufficiency of the Evidence

Tate next claims that the trial evidence was insufficient to convict him of either charged account. More specifically, he claims that "there existed no exclusive evidence period except for hearsay evidence[,]" which "alone will not support a judgment of conviction." (Doc# 1, PageID.7).

Tate's claim that his convictions rested only on hearsay[7] is affirmatively contradicted by the factual narrative in the ACCA's decision affirming his convictions. *See* (attached Exhibit 1, pp. 1-3); *Wilson v. Sellers*, 584 U.S. 122, 125, 138 S. Ct. 1188, 200 L. Ed. 2d 530 (2018) (to determine whether a state

---

not collaterally attack the convictions for ineffective assistance of counsel." (Doc# 1, PageID.6). This claim is meritless on its face. First, Tate's counsel was not required to advise him as such because it would have been a false statement—ineffective assistance claims can be raised on postconviction review. *See* Ala. R. Crim. P. 32.2(d) ("Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable."). Second, even assuming trial counsel told him that, it would have only affected his collateral proceedings. As noted previously, *see* n.4, *supra*, there is no Sixth Amendment right to any assistance of counsel in such proceedings, let alone effective assistance. *See also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

[7] In generally, hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). *See also* Ala. R. Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

court's decision on a habeas petitioner's claim involved either an unreasonable application of federal law or was based on an unreasonable factual determination when the last state court to decide a petitioner's claim did not provide a reasoned explanation, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale[, and ]then presume that the unexplained decision adopted the same reasoning"). Rather, the evidence introduced by the prosecution at trial included testimony by the victim recounting her sexual assault on the night of December 20, 1997, and testing matching Tate's DNA to genetic material from a condom discovered in the victim's underwear during a rape kit examination that took place around 1:00 a.m. the morning after the assault.[8]

Moreover, sufficient evidence was adduced at trial to support both convictions. Relevant here, in Alabama "[a] person commits the crime of rape in the first degree if he…[e]ngages in sexual intercourse with another person by forcible compulsion[,]" Ala. Code § 13A-6-61(a)(1), and "commits the crime of sodomy in the first degree if he…[e]ngages in sodomy with another person by forcible compulsion." *Id.* § 13A-6-63(a)(1). For purposes of those statutes, "sodomy" is defined as "[a]ny sexual act involving the genitals of one person and the mouth or anus of another person[,]" while the term "sexual intercourse" "has

---

[8] Per the ACCA's decision, because the police "were not able to identify a suspect at the time, [the victim]'s rape kit remained sealed and preserved in a refrigerator" until the case was revisited, and kit analyzed, in 2017.

its ordinary meaning and occurs upon any penetration, however slight; emission is not required." *Id.* § 13A-6-60(4)-(5). "Forcible compulsion" is defined as follows:

> Use or threatened use, whether express or implied, of physical force, violence, confinement, restraint, physical injury, or death to the threatened person or to another person. Factors to be considered in determining an implied threat include, but are not limited to, the respective ages and sizes of the victim and the accused; the respective mental and physical conditions of the victim and the accused; the atmosphere and physical setting in which the incident was alleged to have taken place; the extent to which the accused may have been in a position of authority, domination, or custodial control over the victim; or whether the victim was under duress. Forcible compulsion does not require proof of resistance by the victim.

*Id.* § 13A-6-60(1).

As set out in the ACCA's memorandum decision, the victim testified at trial that her assailant—whom she did not know but whose DNA was later matched to Tate's—approached her and began talking to her as she walked home from work. The man, who was " 'taller' than" the victim, "asked her 'if [she] would consider cheating on [her] husband and [she] said no; that [she] loved him.' The man asked, 'what if you were forced. … what if I told you that I have a knife? What if I said I had a gun?' " He then told the victim, " 'if I have to pull it [his gun] out, I'm going to shoot you.' "[9] At this, the victim went with the

---

[9] To the extent the "hearsay" Tate complains of are the victim's statements of what her assailant told her, he is wrong. A statement "offered against an opposing party [that] was made by the party in an individual or representative capacity" is "not hearsay…" Fed. R. Evid. 801(d)(2)(A). *See also* Ala. R. Evid. 801(d)(2)(A) ("A statement is not hearsay if…[t]he statement is offered against a

man behind an abandoned house, testifying she "was terrified." Once there, the assailant "forced [the victim]'s 'head onto his penis and told [her] to suck' "— thereby "[e]ngag[ing] in sodomy with another person by forcible compulsion." He then ordered her to lie down and put his penis in her vagina—thereby "[e]ngag[ing] in sexual intercourse with another person by forcible compulsion."

Tate has made no effort to show how the ACCA's factual narrative "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" as is required to show entitlement to habeas relief. 28 U.S.C. § 2254(d)(2). *See also id.* § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Accordingly, Tate is plainly due no relief on his claims regarding evidentiary sufficiency in Ground Two.

### c. Ground Three – Double Jeopardy

Tate alleges Ground Three as follows:

> Tate asserts that the grand jury failed to charge the felony offenses of first-degree rape and first-degree sodomy and the state did not prove a prima facie case against him because the District Attorney used cumulative convictions in violation of double jeopardy. A fatal variance existed between the indictment and the proof presented at

---

party and is…the party's own statement in either an individual or a representative capacity…").

trial. State cannot convict Tate for both offenses that arose out of the same foundational transaction.

(Doc# 1, PageID.8). Liberally construing Tate's allegations,[10] the undersigned construes Ground Three as alleging that his convictions for first-degree rape and first-degree sodomy under Alabama law arising out of the same incident violated the Double Jeopardy clause of the Fifth Amendment to the United States Constitution.[11]

---

[10] "It is well established that the standards governing the sufficiency of habeas corpus petitions are less stringent when the petition is drafted *pro se* and without the aid of counsel. Hence…the allegations of such petitions to be construed more liberally…" *Williams v. Griswald*, 743 F.2d 1533, 1542 (11th Cir. 1984) (citation omitted). *See also Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers[,]" and "[a]ccordingly … construe [*pro se*] pleadings liberally."). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell*, 760 F.3d at 1168–69 (quotation omitted).

[11]     To the extent Tate actually meant to claim in Ground Three that "[a] fatal variance existed between the indictment and the proof presented at trial[,]" he has failed to specify what that variance was, or allege any facts showing how the purported variance prejudiced him. *See United States v. Baldwin*, 774 F.3d 711, 724 (11th Cir. 2014) ("[A] variance[ is] where the evidence at trial differs from what is alleged in the indictment…[A] defendant must show substantial prejudice to obtain reversal because of a variance."). As for Tate's conclusory assertion that "the state did not prove a prima facie case against him[,]" that assertion is meritless for the reasons discussed above in rejecting Ground Two.

    To the extent Tate also asserts in Ground Three that the grand jury actually failed to indict him of the offenses for which he was convicted, the U.S. Constitution does not create a general right to challenge grand jury proceedings. As the U.S. Supreme Court has recognized:

        If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand

"The Double Jeopardy Clause guarantees that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' " *United States v. Sanchez*, 30 F.4th 1063, 1077 (11th Cir.) (quoting U.S. Const. amend. V.), *cert. denied*, 143 S. Ct. 227 (2022). "The protections it affords include a prohibition against 'multiple punishments for the same offense.' " *Id.* (quoting *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009)). Put another way, the Double Jeopardy Clause may be implicated "[w]here the same conduct violates two statutory provisions…" *Garrett v. United States*, 471 U.S. 773, 778, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985).

---

jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Costello v. United States*, 350 U.S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397 (1956) (footnote omitted).

Tate has not alleged any facts to indicate that the grand jury that indicted him was either biased or not legally constituted. Moreover, given the general secrecy of grand jury proceedings in Alabama, *see* Ala. Code § 12-16-214 ("The Legislature hereby finds, declares and determines that it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate. The provisions of this division are to be construed for the accomplishment of this purpose…"), Tate has failed to allege any specific facts showing that his conclusory allegation is based on anything but rank speculation.

Tate has failed to show a double-jeopardy violation. Though both of Tate's convictions arose out of the same <u>encounter</u> with his victim, each rests on different <u>conduct</u> occurring during that encounter. As noted previously, Tate first engaged in "sodomy"—defined as "[a]ny sexual act involving the genitals of one person and the mouth or anus of another person," Ala. Code § 13A-6-60(5)—when he "forced [the victim]'s 'head onto his penis and told [her] to suck.' " Tate next engaged in "sexual intercourse" for purposes of first-degree rape—defined as having "its ordinary meaning and occur[ring] upon any penetration, however slight[,]" *id.* § 13A-6-60(4)—when he thereafter made the victim lie down and put his penis into her vagina.

But even if Tate is correct that his convictions punished the same conduct, he has still not shown a double-jeopardy violation.

> The Supreme Court has penned a black-letter rule for use in determining when dual statutory provisions prohibit the same offense: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932). Our analysis focuses on the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial. *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S. Ct. 2260, 2265, 65 L. Ed. 2d 228 (1980); *Iannelli v. United States,* 420 U.S. 770, 785, n. 17, 95 S. Ct. 1284, 1294 n.17, 43 L. Ed. 2d 616 (1975); *United States v. Kimbrew,* 406 F.3d 1149, 1151 (9th Cir. 2005).

*United States v. Bobb*, 577 F.3d 1366, 1372 (11th Cir. 2009)

As noted previously, an element of first-degree rape is "sexual intercourse," which requires "any penetration, however slight…" Ala. Code § 13A-6-60(4). On the other hand, as the ACCA has noted, "penetration is not an element of sodomy. *Chandler v. State*, 555 So. 2d 1138, 1140 (1989) (citing *Glover v. State*, 518 So.2d 247 (Ala. Crim. App. 1987)). Moreover, "sexual intercourse" for purposes of first-degree rape involves the defendant's penetration of a victim's "sexual organ" (i.e. a female's vagina), *see Seales v. State*, 581 So. 2d 1192, 1193-97 (Ala. 1991); *Harris v. State*, 333 So. 2d 871, 874 (Ala. Crim. App. 1976) ('The actual penetration of the female sex organ by the male sex organ is required as an element of rape, according to all the authorities and this penetration constitutes carnal knowledge, which is synonymous with sexual intercourse." (quotation omitted)), while "sodomy" only involves contact with the victim's mouth or anus (i.e., non-sexual orifices). Thus, each statute "requires proof of a fact which the other does not[,]" and the Double Jeopardy clause is not violated

Accordingly, Tate is plainly due no relief on his claims in Ground Three.

### d. Ground Four – Sufficiency of the Indictment

In his final ground for habeas relief, Tate alleges that "the state failed to prove the essential elements of the offenses charged in the indictment" because "the date, address, or time of offenses was not on the indictment in violation of Rule 13.1 and 13.2 Alabama Rules of Criminal Procedure." (Doc# 1, PageID.8). Even if Tate could point to an error under the Alabama Rules of Criminal

Procedure, he is due no federal relief for it—the United States Supreme Court has "repeatedly held that ' "federal habeas corpus relief does not lie for errors of state law." ' " *Wilson v. Corcoran*, 562 U.S. 1, 5, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010) (per curiam) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L.Ed.2d 606 (1990))). Moreover, Tate is wrong that Alabama Rule of Criminal Procedure 13.2 required his indictment to  include "the date, address, or time of offenses."[12]  Rule 13.2(d) states: "It is not necessary to state the precise time or date at which or on which the offense is alleged to have been committed, or the place where the offense is alleged to have been committed unless the time or place is a material element of the offense." Neither time nor place is a material element of either first-degree rape or first-degree sodomy. *See Cure v. State*, 600 So. 2d 415, 420–21 (Ala. Crim. App. 1992) ("[T]he indictments were not required to allege the time and places of the alleged offenses. 'It is not necessary to state the precise time at which an offense was committed in an indictment, but it may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense.' *Coburn v. State*, 424 So.2d 665, 667 (Ala. Crim. App. 1982). Time is not a material offense of first degree rape, first degree sodomy, or child abuse. *See Hambley v. State*, 565 So. 2d 692

---

[12] Alabama Rule of Criminal Procedure 13.1 merely provides general definitions of what a criminal indictment, a criminal information, and a criminal complaint are, and does not support Tate's Ground Four claim.

(Ala. Crim. App.1990) (time not a material element of offense of first degree sexual abuse charge); *Sasser v. State*, 494 So. 2d 857 (Ala. Crim. App.1987) (time not a material element of first degree rape charge).").[13]

Accordingly, Tate is plainly due no relief on his claims in Ground Four. And because, as stated above, he is plainly due no relief on any other ground raised, his present habeas petition is therefore due to be **DISMISSED with prejudice** under  Rule 4 of the Rules Governing Section 2254 Cases.[14]

---

[13] To the extent Tate generally challenges the sufficiency of the evidence against him in Ground Four, that challenge is due to be rejected for the reasons discussed above in rejecting Ground Two.

[14]    The undersigned notes that none of the grounds raised in Tate's present habeas petition appear to be exhausted because they have not been subject to one complete round of review through Alabama's courts. *See, e.g.*, *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) (Under "the exhaustion rule, 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999)); 28 U.S.C. § 2254(b)(1). On direct appeal, Tate challenged (1) the denial of his motion to suppress the DNA evidence, (2) the trial court's prohibiting Tate from eliciting certain testimony from the victim's ex-husband under Alabama Rule of Evidence 608; and (3) the denial of Tate's requested jury instructions. (*See* attached Exhibit 1). As noted previously, Tate has filed a Rule 32 petition seeking collateral review of his convictions, but the state circuit court has taken no action on it to date seemingly due to Tate's failure to submit either the filing fee or an *in forma pauperis* application.

Whatever effect that failure has on Tate's continued ability to pursue Rule 32 relief in state court, that failure prevented Tate's Rule 32 petition from tolling the one-year statute of limitations for bringing his habeas petition. *See* 28 U.S.C. § 2244(d); *Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1270–71 (11th Cir. 2012) (per curiam)   (holding that Alabama prisoner's federal habeas petition was time-barred under AEDPA because while his initial state Rule 32 petition was filed within the 1-year limitations period, it was not "properly filed" because it was submitted "without the filing fee or a motion to proceed *in forma pauperis*[,]" and therefore did not toll the limitations period). While Tate did file

### e.    Certificate of Appealability

For habeas petitions brought by persons in state custody, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."   28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). For all cases, "[a] certificate of appealability may issue 'only if the applicant has made a

---

this habeas action within the one-year period from the conclusion of his direct appeal, "the filing of a petition for habeas corpus in federal court **does not** toll the statute of limitations…" *Rhines v. Weber*, 544 U.S. 269, 274-75, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005) (emphasis added). Thus, as Tate's 1-year statute of limitations for challenging his convictions in federal court appears to have run while this case was pending, if the Court were to dismiss his present petition without prejudice so that he may exhaust his claims in his Rule 32 proceedings, the dismissal would be tantamount to a dismissal with prejudice because a subsequent habeas petition would be time-barred.

Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 337-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quotations omitted).

Upon due consideration, the undersigned finds that Tate should be **DENIED** a certificate of appealability in connection with the dismissal of this habeas action, as his petition has failed to present any non-conclusory allegations or evidence making a substantial showing of the denial of a constitutional right.[15]

## III.    *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Tate's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this action (Doc# 1) be **DISMISSED with prejudice** under

---

[15]    Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection by the petitioner to the recommendation to deny a certificate of appealability, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Should this Court deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, that the Court **DENY** Tate a Certificate of Appealability in connection with this dismissal, and that such final judgment thereafter be set out by separate document in accordance with Federal Rule of Civil Procedure 58.[16]

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. Gen LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection

---

[16] *See* Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the **16th** day of **January 2026**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**